## Hirsch v. Uniform Building and Loan Association

*Sterling & Willing*, for plaintiff; *M. Jacob Markman*, for defendant.

STERN, P. J., March 14, 1933.—This is a rule for judgment for want of a sufficient affidavit of defense. The statement of claim avers that the plaintiff was the holder of fifteen shares of stock in the defendant building and loan association; that up to and including December, 1931, he had paid on his stock the sum of $1890; that on December 14, 1931, he gave written notice of his desire to withdraw; that the association is not indebted for any borrowed money; that one-half of the funds in the treasury of the association have been sufficient since the date of his withdrawal notice to pay his claim and those of all stockholders whose notices of withdrawal were filed prior to his own; that the defendant association was solvent on December 14, 1931, and has continued solvent up to the present time; that the board of directors of the association has paid out large sums to stockholders on shares for which withdrawal notices were filed subsequently to that of the plaintiff; and that, in addition to the amount paid by him on his stock, he is entitled to a further sum of $430.50, representing the profits allocated to the shares in the series in which he held

stock, as shown in the financial statement of the association issued for the year ending December 16, 1931.

The financial statement of the association thus referred to, a copy of which is attached to the statement of claim, shows total assets of $553,513.44, total liabilities of $1483.63, amount due shareholders $372,636, and profits, consisting of sums distributed to shareholders, contingent fund, and reserve for depreciation, totaling $179,393.81. This statement showed a book value of the plaintiff's stock of $154.70 per share.

The affidavit of defense admits the giving of notice of withdrawal by the plaintiff on December 14, 1931, but avers that it had received prior notices from other stockholders as well as numerous notices subsequently to that of the plaintiff. It admits that there are sufficient funds in the treasury to meet the plaintiff's demands, and that one-half of the funds in the treasury have been sufficient, since the date of the plaintiff's notice of withdrawal, to pay his claim and those of all stockholders whose notices of withdrawal were filed prior to his own, but not enough to pay all withdrawing stockholders. It admits that there has been and is no indebtedness for borrowed money. It avers that payment at this time to any of the withdrawing stockholders in the full amount of their respective contributions would cause an impairment of the defendant's capital and not leave a relative proportion of the assets for the remaining stockholders; that while it is true that on the basis of its book values the defendant was solvent at the time the plaintiff's notice of withdrawal was given and is still solvent, the association, "as a matter of sound business judgment," was then and is now "potentially" insolvent. It avers that at the time the plaintiff's withdrawal notice was filed the association was the owner of 98 mortgages, amounting to $353,976.80; that 38 of these were in default for a period of three months or more, the total arrears on same being $21,320.21; that the association then owned 22 parcels of real estate of a book value of $81,724.92; that the association now owns 65 mortgages, aggregating $189,014.75, thirty of which, of an aggregate principal of $67,000, are now in default for a period of three months or more, with arrears thereon amounting to $7279.12; that the 65 mortgages are subject to prior encumbrances totaling $212,700; that all of the 65 mortgages were acquired by the association prior to the date of the plaintiff's withdrawal notice; that the association now owns 12 pieces of real estate of a book value of $23,700, all of which were acquired by foreclosure of mortgages representing investments made by the association prior to the date of the plaintiff's withdrawal notice; that the real value of the defendant's assets could not be ascertained at the time of the plaintiff's withdrawal notice and cannot now be ascertained; that the association's real estate is not marketable under present conditions, and that it is likely that the defendant will have to foreclose other mortgages and acquire other real estate as the result thereof; that the prior liens on the properties on which the association has mortgages, or which it owns, are past due; that many of its mortgages are greater in amount than the value of the real estate by which they are secured, and that much of the real estate which it owns is now worth considerably less than its cost to the defendant.

The affidavit of defense also avers that on April 3, 1930, the by-laws were amended at a duly convened meeting of the defendant association, so as to provide that "no profit or interest whatever" should be allowed to withdrawing stockholders. It admits that the board of directors has paid out fifty per cent. of their respective capital contributions to several stockholders who gave notice of withdrawal subsequently to that of the plaintiff, but claims that by these

payments the plaintiff has benefited along with the other remaining stockholders by reason of "the discount from the withdrawal value" of the stock of such withdrawing shareholders.

The affidavit of defense sets forth a financial statement issued by the association as of December 13, 1932, from which it appears that the total assets were then $277,661.26, the total liabilities $44,349.57, the amount due shareholders $155,361, and the profits and reserves $77,950.69. This statement shows a book value of the plaintiff's stock, as of that date, of $158.43 per share.

It is to be noted that the affidavit of defence does not aver or even pretend to claim actual insolvency as of the end of the year 1931, when the plaintiff's notice of withdrawal was given. The most it asserts is that the association was "potentially" insolvent at that time. According to its own financial statement, the assets were then sufficient, according to the books, to return to the stockholders the full amount of their paid-in contributions, and there was in addition a total of $179,393.81 listed as "profits." As against these figures it is averred merely that at that time thirty-eight of its mortgages were in default and that it owned twenty-two pieces of real estate of a book value of $81,724.92. There is nothing to indicate, however, what the principal sum of these thirty-eight mortgages amounted to, or what appraisement there was of their actual value. Even if they averaged the same as all of the mortgages then held by the association, and even if they had but slight actual value, and even if we consider all of the twenty-two pieces of real estate as having no value whatever, apparently there might still be left an appreciable margin of profits over and above the liabilities and the paid-in contributions of the stockholders. Therefore, notwithstanding the vague allegations that the association was "potentially" insolvent, and that the plaintiff could not have been paid in full without impairing the amounts which other stockholders would receive, and the general pessimistic atmosphere which the affidavit of defense obviously seeks to create, there are no facts or figures given to justify any conclusion of insolvency, and, indeed, as already stated, there is no claim that there was or is any such insolvency.

The affidavit of defence makes no attempt to indicate what the plaintiff's stock was worth in December, 1931, if it was not worth the full amount of the payments which the plaintiff had made thereon. It is, however, interesting to note the averment to the effect that the plaintiff and the remaining stockholders profited by reason of the fact that other withdrawing stockholders (some of whom put in notices of withdrawal after that of the plaintiff) were paid only fifty per cent. of their respective capital contributions. This is a clear admission that the stock was worth more than fifty per cent. of the amount which had been paid thereon by the holders. Nevertheless, the defendant refuses to admit that the plaintiff has any right of recovery; in other words, it takes the position that the plaintiff is not entitled to obtain as a matter of right even that which was paid voluntarily to other stockholders even though their notices of withdrawal were given subsequently to that of the plaintiff. Indeed, it will be seen as a result of a comparison of the defendant's financial statements of December, 1931, and December, 1932, that there was a diminution in the number of outstanding shares from 4046 to 1696½ during the year 1932, a substantial part of which represented withdrawals, and that a large sum was paid out during that period for cancellation of stock; the force and effect of such payments are not weakened merely by averring that they were payments made by way of "settlement and compromise."

The affidavit of defense contains statements as to the present condition of the association and of the harm which would be done to other stockholders if the

plaintiff were now paid the full amount of his capital contributions, but, of course, such allegations are irrelevant, because the question is not as to the present financial condition of the association, but as to its condition in December, 1931, when the plaintiff gave notice of withdrawal. His rights are dependent upon the solvency or insolvency of the association as of that time, for the law gives the right of withdrawal to stockholders for the very purpose of allowing them to recall their investment while the enterprise is still solvent, instead of making them go along until the association in which they hold stock becomes insolvent. Neither is it material whether subsequent losses result from new loans being made or only by reason of a shrinkage in the value of the investments owned by the association at the time notice of withdrawal is given; it is just as disadvantageous for a stockholder and as unjust to him in the one case as in the other to compel him to remain in the association against his will while the change from solvency to insolvency occurs; if solvency exists, he has the right to demand liquidation of his holdings instead of being forced to join his associates in speculating on the rise or fall of market values of real estate. Of course, a withdrawing stockholder cannot demand actual payment until there is sufficient cash in the treasury for that purpose as stipulated by the law, but that question does not arise in the present case, because the affidavit of defense admits that there is and constantly has been sufficient cash to pay the plaintiff and all other shareholders who gave notice of withdrawal prior to his own, and that is all that the plaintiff need show in order to entitle himself to payment if the association was solvent at the time he gave his notice of withdrawal.

There is no doubt but that the defendant association is not estopped nor concluded in any way by the figures set forth in its books or in its financial statements. It is always permissible for it to show that such figures and statements were incorrect, and that in spite of them it was actually insolvent at any given time in question. As has already been stated, however, there is nothing in the present affidavit of defense which attempts to assert that the defendant association was in fact insolvent in December, 1931.

The pleadings in the present case thus bring us squarely to the question as to whether a building and loan association can prevent a judgment from being obtained by a withdrawing stockholder which alleges, not actual insolvency, but merely that in the opinion of the board of directors, exercising what is claimed to be "sound business judgment," it would be inadvisable or undesirable to pay the withdrawing stockholder on the ground that there exists a "potential" insolvency. In the opinion of the court, such a position is untenable, because it violates the basic principles of pleading established for affidavits of defense, because it denies the right of withdrawal from solvent associations which has been given to stockholders by the statutory law of the state, and because it is apparently unjust to those wishing to withdraw from an enterprise in which they no longer have confidence and who are, therefore, desirous of conserving their investment as it then exists.

If an affidavit of defense to the claim of a withdrawing stockholder avers insolvency and sets forth facts and figures justifying such an assertion, the plaintiff in the suit has the means, if he so desires, of safeguarding his interest in the association by seeking a receivership, the normal result of which would be the taking of possession of the assets of the association by the secretary of banking. There would then result a controlled liquidation of the assets —not necessarily immediate and at any price, but attended by the caution and the judgment of the Department of Banking, and the added protection of supervision by the courts to the extent that they have jurisdiction in such matters.

If, however, the affidavit of defense does not claim insolvency, but indulges merely in a recital of unfavorable economic and financial conditions, and sets up the "business judgment" of the board of directors to defeat the plaintiff's rights, the plaintiff would be deprived of every substantial right if such an affidavit of defense were to be held sufficient. He cannot invoke the remedy of receivership or other liquidation processes applicable to insolvency because insolvency is not asserted or admitted. On the other hand, there is no admission as to any definite value of his stock so as to enable him to obtain a judgment for at least an amount admitted to be due with leave to proceed for a balance, if any. Thus denied judgment on the pleadings, he is no further advanced by a jury trial, for what would the jury be called upon to decide, and how or what could he prove in order to establish that the business judgment of the board of directors was being poorly exercised or that the "potential" insolvency was merely a pessimistic point of view? The result is that both legal and equitable remedies would be taken away from him. Although the law gives him the right to withdraw from an association then solvent, he would be forced to continue as an associate with those who persisted in risking further shrinkage in values as against his own judgment to the contrary and possibly until the association would become insolvent in fact.

The court does not think it is impossible, or even unusually difficult, for a building and loan association to state an appraised value of its assets and thereby to indicate its solvency or insolvency. Real estate, and, therefore, mortgages on real estate, are the subject of valuation, and opinions as to such values are given every day in the course of judicial proceedings. The assets of banks, and, indeed, of all corporations, are constantly being valued and appraised for taxation or other purposes. To allege that it is "impossible" to determine whether solvency or insolvency exists (and thereby to attempt to prevent stockholders from acting in protection of their lawful rights), may be true in an ultimate or scientific sense, but not from the pragmatic standpoint established by the law in reference to such problems.

The court, therefore, is of opinion that the affidavit of defense does not defeat the plaintiff's right to judgment in this action. As to his claim for profits, however, the affidavit of defense asserts that at a meeting of the association held prior to the time when he gave his notice of withdrawal, an amendment to the by-laws was adopted which provided that no profits or interest whatever should be allowed to withdrawing stockholders. It is urged by the plaintiff that it is not alleged that proper notice of this meeting was given, but there is an averment that the meeting was "duly convened," and this would seem sufficient for the purposes of pleading. The plaintiff also contends that the law makes it obligatory upon an association to fix the amount of profits or the rate of interest to be allowed to withdrawing stockholders, and that no such amount or rate was fixed in the present instance. In the opinion of the court, however, the power given an association to provide in the by-laws for the amount of profits or the rate of interest to be allowed carries with it necessarily the power to declare that *no* profits or interest should be allowed, for obviously the by-laws could provide, in any event, for an allowance so small as to be negligible or nominal and thereby, in effect, for none.

The plaintiff's rule for judgment is made absolute in the sum of $1890, with leave to proceed for the balance claimed.